UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **Ali Ali**<br><br>**And**<br><br>**Diamond Harvey**<br><br>         **Plaintiffs**<br><br>v.<br><br>**Allstate Northbrook Indemnity Company**<br><br>Serve:  CT Corporation System<br>           306 West Main Street<br>           Suite 512<br>           Frankfort, KY  40601<br><br>         **Defendant** | **Case No.**   3:23CV-108-RGJ |

**COMPLAINT FOR DAMAGES WITH JURY DEMAND**

Come the Plaintiffs, Ali Ali and Diamond Harvey (hereinafter collectively 'Plaintiffs', individually 'Ali' and 'Harvey'), by counsel, and for their Complaint against Defendant, Allstate Northbrook Indemnity Company (hereinafter 'Allstate'), state as follows:

**Parties, Jurisdiction & Venue**

1. At all times pertinent hereto, Plaintiffs were citizens of Jefferson County, Kentucky residing at 4217 Sunset Drive, Louisville, Kentucky.

2. At all times pertinent hereto, Allstate was a corporation incorporated under the laws of the state of Illinois and doing business in the Commonwealth of Kentucky.

3. At all times pertinent hereto, Allstate acted by and through its agents, ostensible agents, servants, employees, and/or other representatives.

4. At all times pertinent hereto, Allstate, as part of its regular business practice, marketed and sold vehicles with salvage titles to the citizens of the Commonwealth of Kentucky, including Plaintiffs.

5. This Court is the proper place for jurisdiction and venue in that Allstate sold and delivered the subject vehicle hereinafter described to Plaintiffs in Louisville, Jefferson County, Kentucky. The amount in controversy exceeds $75,000.00, exclusive of interest and attorney fees.

## Facts

6. On or about March 4, 2022 Allstate obtained a California Salvage Certificate for a 2019 Jeep Grand Cherokee TrackHawk, VIN# 1C4RJFN95KC562816 (hereinafter 'Allstate VIN').

7. On or about March 11, 2022, Allstate advertised a 2019 Jeep Grand Cherokee TrackHawk (hereinafter 'TrackHawk') for sale with online auto auction company, CoPart. Allstate used the Allstate VIN in the description of the vehicle and provided a photo of the Allstate VIN in the advertisement.

8. On or about March 11, 2022, through Dee Auto Sales, Plaintiff, Ali entered the winning bid on CoPart for the TrackHawk.

9. On or about March 14, 2022, Ali delivered a check for $43,463.00 to CoPart for the purchase of the TrackHawk.

10. Plaintiffs purchased the TrackHawk for Harvey's use as a family vehicle to transport their children.

11. Thereafter, Ali received delivery of the TrackHawk and the California Salvage Certificate. He began purchasing parts and making the repairs necessary to qualify for a Kentucky Title.

12. Ali did not replace the driver's side door of the TrackHawk.

13. On or about June 15, 2022, Harvey applied for a Kentucky Title using the California Salvage Certificate provided by Allstate.

14. On or about July 12, 2022, Ali was stopped by the Kentucky State Police while driving the TrackHawk. During the stop, officers inspected the VIN number on the dash of the vehicle (Allstate VIN), the frame of the vehicle (Confidential VIN), and the driver's door (Door VIN).

15. The officers discovered that the Confidential VIN and Door VIN were entered in the National Crime Information Center database as stolen. The officers seized the TrackHawk and arrested Ali. Ali spent the night in jail.

16. The Confidential VIN indicated that the TrackHawk had been stolen in 2021 from an individual insured by USAA. Following the theft, USAA paid the claim and acquired ownership, but not the possession of the TrackHawk, because it was not recovered after the theft.

17. On or about August 3, 2022, Plaintiffs notified Allstate that the TrackHawk it had sold to Ali was a stolen vehicle.

18. Plaintiffs later discovered that the Allstate VIN belonged to another vehicle registered in Illinois and owned by individuals not party to this action.

19. On or about September 22, 2022, Ali was indicted for Receiving Stolen Property $10,000.00, a Felony with a penalty of 5 to 10 years in prison.

20.  On or about September 28, 2022, Allstate requested an amendment of the California Salvage Certificate for the TrackHawk, thereby voiding the California Salvage Certificate it provided to Ali.

21.  Upon information and belief, USAA has taken possession of the TrackHawk.

## Count One
### Allstate's Breach of the Warranty of Title

22.  Plaintiffs incorporate by reference the preceding paragraphs as if restated herein and further state that the actions taken by Defendant Allstate breach the Warranty of Title.

23.  On or about March 11, 2022, Allstate, acting by and through its duly authorized agent, sold the TrackHawk to Dees Auto Sales as agent for Plaintiffs.

24.  At the time of the sale of the TrackHawk to Plaintiffs, Allstate warranted that the title to the TrackHawk was good and its transfer rightful.

25.  Allstate breached its Warranty of Title in that the California Salvage Certificate contained a false VIN number.

26.  Allstate breached its Warranty of Title in that the vehicle it delivered to the Plaintiffs had been stolen from its rightful owner.

27.  Plaintiffs discovered the breach of Warranty of Title on or about July 12, 2022, when Ali was arrested for receiving a stolen vehicle.

28.  Allstate has taken no action to remedy the breach.

29.  Allstate has intentionally compounded the breach by voiding the California Salvage Certificate it conveyed to Plaintiffs as part of the sale.

## Count Two
## Allstate's Breach of the Warranty of Freedom from Encumbrances

30.     Plaintiffs incorporate by reference the preceding paragraphs as if restated herein and further state that the actions taken by Allstate breach the Warranty of Freedom from Encumbrances.

31.     Allstate was a merchant regularly dealing in salvage vehicles like that sold to Plaintiffs and, at the time of the sale to Plaintiffs, warranted to Plaintiffs by implication of law that the TrackHawk would be delivered free of the rightful claim of any third person by way of infringement or the like.

32.     Allstate breached the Warranty of Freedom from Encumbrances in that the TrackHawk it sold and delivered to the Plaintiffs belonged to USAA.  As a result of Allstate's breach, Plaintiffs did not receive delivery of the TrackHawk free of the rightful claim of USAA.

33.     Allstate has taken no action to remedy the breach.

## Count Three
## Allstate's Violation of the Kentucky Consumer Protection Act

34.     Plaintiffs incorporate by reference the preceding paragraphs as if restated herein, and further state that the actions taken by Allstate constitute a violation of the Kentucky Consumer Protection Act.

35.     As a result of the unfair, false, misleading and deceptive acts of Allstate Plaintiffs were induced to purchase a vehicle from Allstate which Allstate did not own and could not transfer to Plaintiffs.

## Count Four
## Allstate's Fraud

36. Plaintiffs incorporate by reference the preceding paragraphs as if restated herein and further state that the actions taken by Defendant Allstate constitute fraud.

37. Allstate falsely asserted that it held legal title to the TrackHawk it sold to the Plaintiffs.

38. Allstate's misrepresentation regarding the title, VIN number and its ownership of vehicle was material to the transaction.

39. Allstate knew or should have known that the Allstate VIN was false.

40. Allstate knew or should have known that the TrackHawk it offered for sale was a stolen vehicle.

41. Allstate represented that it held legal title to the vehicle as an inducement to selling the vehicle to Plaintiffs.

42. Allstate provided the false VIN number as an inducement to selling the vehicle to Plaintiffs.

43. Plaintiffs acted in reliance on the false assertions of Allstate in purchasing the TrackHawk.

## Count Five
## Unjust Enrichment

44. Plaintiffs incorporate by reference, the preceding paragraphs, as if restated herein and further state that Allstate has been unjustly enriched by its actions.

45. Allstate received the benefit of the payment of all funds due to it for purchase of the TrackHawk, which it did not own and thereby has been unjustly enriched to the detriment of Plaintiffs.

## Count Six
## Conversion

46. Plaintiffs incorporate by reference, the preceding paragraphs as if restated herein and further state that Allstate has intentionally and wrongfully converted the funds paid by Plaintiffs for purchase of the TrackHawk in violation of the law.

## Count Seven
## Intentional Infliction of Emotional Distress

47. Plaintiffs incorporate by reference, the preceding paragraphs, as if restated herein.

48. Allstate's conduct is extreme and outrageous.

49. Allstate has intentionally and/or recklessly caused Plaintiffs severe emotional distress.

## Count Eight
## Punitive Conduct

50. Plaintiffs incorporate by reference, the preceding paragraphs as if restated herein.

51. Allstate acted with oppression, fraud, malice, and with reckless disregard for the consequences of its acts by failing to reasonably investigate, examine and ascertain the ownership of the TrackHawk before placing it for sale.

52. Allstate acted with oppression, fraud, malice, and with reckless disregard for the consequences by failing to take reasonable steps once notified of its breach of Warranty of Title.

53. Allstate acted with oppression, fraud, malice, and with reckless disregard for the consequences by voiding the California Salvage Title it provided to the Plaintiffs.

**Count Nine
Damages**

54. Plaintiffs incorporate by reference, the preceding paragraphs as if restated herein.

55. As a result of the conduct set forth above, Plaintiffs have sustained the following damages:

    (a) Plaintiffs have lost the use of the funds paid to Allstate to purchase the TrackHawk;

    (b) Plaintiffs have lost possession of the TrackHawk;

    (c) Plaintiffs have incurred incidental damages including but not limited to the cost of delivery, the costs of repairs, parts, and improvements, the cost of a replacement vehicle, and interest, all of which were incidental and necessary to the purchase and anticipated use of the TrackHawk;

    (d) Plaintiffs have incurred attorney's fees, court and bond costs in defending against the criminal charges filed against Ali and in pursuing Allstate civilly;

    (e) Plaintiffs have suffered extreme emotional distress

WHEREFORE, Plaintiffs Ali Ali and Diamond Harvey demand as follows:

1. A trial by jury on all issues of fact herein;

2. Compensatory and statutory damages against Allstate in an amount to be determined by a jury sitting at the trial of this matter;

3. Pre-Judgment interest at the statutory rate at the rate of 8% from March 14, 2022, until the date of judgment and post-judgment interest at the applicable legal rate;

4. Punitive damages;

5. For Plaintiffs' costs herein expended;

6. For any and all other relief to which Plaintiffs may appear entitled.

Respectfully submitted,

***/s/ Anne Milton McMillin***

Anne Milton McMillin
125 South 6th Street
Suite 300
Louisville, KY 40202
Telephone: 502-822-6848
Facsimile: 502-405-8180
Email: ammatty@bellsouth.net
*Counsel for Plaintiff*