UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALI ALI, ET AL.                                                                                                  Plaintiff

v.                                                                                       Civil Action No. 3:23-cv-108-RGJ

ALLSTATE NORTHBROOK                                                                        Defendant
INDEMNITY, CO.

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This case comes before the Court on Defendant, Allstate Northbrook Indemnity Company's ("Allstate"), motions to dismiss all of Plaintiffs, Ali Ali's ("Ali") and Diamond Harvey's ("Harvey") (collectively "Plaintiffs"), claims. [DE 12; DE 19]. Briefing is complete and the matter is ripe. [DE 15; DE 18; DE 20; DE 21]. For the reasons below, Allstate's motions to dismiss [DE 12; DE 19] are **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Plaintiffs' claims arise from their purchase of a 2019 Jeep Grand Cherokee TrackHawk ("Jeep"). [DE 1, Complaint, at 2].

In March 2022, Allstate obtained a California Salvage Certificate for the Jeep with the Vehicle Identification Number ("VIN") 1C4RJFN95KC562816 ("Allstate VIN"). [*Id*.]. Allstate then advertised the Jeep for sale online with an auto auction company, CoPart. [*Id*.]. The advertisement included the Allstate VIN in the vehicle description as well as in an attached photo of the vehicle's dash. [*Id*.].

Plaintiffs utilized the services of Dee Auto Sales in Louisville, Kentucky to purchase the Jeep from Allstate via CoPart's website. [*Id*.]. They purchased the Jeep for use as a family vehicle. [*Id*. at 3]. On March 14, 2022, Ali paid $43,463.00 to CoPart. [*Id*. at 2]. The Jeep was later delivered to Plaintiffs along with the California Salvage Certificate from Allstate. [*Id*. at 3]. Ali

1

made some repairs to the Jeep but did not replace the driver's side door. [*Id*.]. On June 15, 2022, Harvey applied for a Kentucky title for the Jeep using the California Salvage Certificate. [*Id*.].

On July 12, 2022, Ali was stopped by the Kentucky State Police ("KSP") while driving the Jeep. [*Id*.]. The officers inspected the VINs listed on the dash (Allstate VIN), the frame ("Confidential VIN"), and the driver's side door ("Door VIN") and found that they did not match. [*Id*.]. The Confidential VIN and the Door VIN were both listed in the National Crime Information Center as stolen. [*Id*.]. KSP seized the Jeep and Ali was arrested. [*Id*.]. He spent one night in jail, and was later indicted for Receiving Stolen Property $10,000 or more, a felony. [*Id*.].

The Confidential VIN revealed the true history of the Jeep. In 2021, it was stolen from its then-owner, a USAA customer. [*Id*. at 3]. Following the theft, USAA paid the claim to its customer and acquired ownership—but not possession—of the Jeep, which had not been recovered. [*Id*.] Plaintiffs later found that the Allstate VIN—the one appearing on the dash and in the CoPart listing—belongs to a vehicle registered in Illinois and owned by individuals not listed in this action. [*Id*.]

In August 2022, Plaintiffs notified Allstate that the Jeep it sold them was a stolen vehicle. [*Id*.]. Allstate then requested an amendment of the California Salvage Title, which voided the certificate provided to Ali. [*Id*. at 4]. The Jeep is now in USAA's possession. [*Id*.]. And Plaintiffs have not been refunded the purchase price. [*Id*. at 4].

Plaintiffs bring this action asserting nine claims against Allstate in connection with its sale of the Jeep: breach of warranty of title, breach of warranty of freedom from encumbrances, violation of the Kentucky Consumer Protection Act ("KCPA"), fraud, unjust enrichment, conversion, intentional infliction of emotional distress ("IIED"), punitive conduct, and damages. [*Id*. at 4–8].

2

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Rule 12(d) provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The court, however, "may consider the Complaint and any exhibits attached thereto, public records, items

appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting the motion to one for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ANALYSIS

### I.    Matters Outside the Pleadings

Plaintiffs object to the Court's consideration of most of the exhibits attached to Allstate's motion to dismiss under Fed. R. Civ. P. 12(d). [DE 15 at 188-92]. The California Salvage Certificate and the CoPart listing are both mentioned in the complaint and are central to the Plaintiffs' contract claims. [*See* DE 1 at 2–5]. Additionally, the Kentucky title documents in exhibits 6 and 7 are mentioned in the complaint and are public records. *See Bassett*, 528 F.3d at 430. In contrast, the Co-Part sale invoice is an internal document which is (1) not mentioned in the complaint, and (2) does not reference either Plaintiff or contain their signatures. [DE 12-6]. The police report and Hardin Circuit Court docket both relate to assertions in the complaint and raise additional matters. [DE 12-9; DE 12-10]. Further, they are not certified public records, and the Sixth Circuit has questioned whether police reports qualify as public records under the Rule 12(d) standard. *See Courser v. Michigan House of Representatives*, 831 F. App'x 161, 170 n. 4 (6th Cir. 2020) ("We hesitate in concluding that the police report is a public record that the district court could use."). The remaining exhibits are neither public records nor directly mentioned in the complaint. [DE 12-3; DE 12-4]. It is not necessary to prolong the consideration of this motion by calling for additional briefing to comply with Rule 56. Thus, the Court declines to consider Allstate's exhibits 2, 3, 5, 8, and 9 in its analysis. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) ("even a district court's failure to expressly reject evidence attached to the briefs triggers its duty to treat the motion as one for summary judgment").

**II.      Claims for Breach of Warranties of Title and Freedom from Encumbrances**

Defendant moves to dismiss Plaintiffs' breach of warranty claims, arguing that Plaintiffs are not in privity with Allstate. Allstate claims it was in privity of contract with Dee Auto Sales, not Plaintiffs. [DE 12-1 at 175]. Under Kentucky law, privity of contract is a prerequisite for claims based on breach of warranty. *House v. Bristol-Myers Squibb Co.*, No. 3:15-CV-00894-JHM, 2017 WL 55876, at *6 (W.D. Ky. Jan. 4, 2017) ("Under Kentucky law, privity of contract is an essential element of a claim for breach of an implied warranty."). "As a rule, privity of contract does not extend beyond the buyer-seller setting, and an intervening purchaser destroys privity." *Gaunce v. CL Med. Inc.*, No. 5: 14-346-DCR, 2015 WL 893569, at *2 (E.D. Ky. Mar. 2, 2015) (citing *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006)).

Plaintiffs allege that they purchased the Jeep from Allstate, albeit through Dee Auto Sales. [DE 1 at 2–3]. The fact that each party used an agent—Allstate used CoPart and Plaintiffs used Dee Auto Sales—does not defeat the buyer-seller relationship. "In general, as the Restatement notes, '[w]hen an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and the third party agree otherwise.'" *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 596 (Ky. 2012) (quoting *Restatement (Third) of Agency* § 6.01 (2006)).

This sale structure is distinguishable from a manufacturer-distributor relationship, where purchasers are not in privity of contract with the manufacturer. *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952 (E.D. Ky. 2019) (holding breach of warranty plaintiff lacked privity with a dog food manufacturer when she purchased the food through a pet store). The complaint does not state that the Jeep was first sold to CoPart—only that CoPart sold the Jeep on behalf of

Allstate, which retained ownership of the vehicle. [DE 1 at 2-3]. Indeed, the California Salvage Certificate lists Allstate as the owner. [DE 12-2].

Based on the allegations in the complaint, the relationship between Plaintiffs and Dee Auto Sales is also one of agency. The complaint states that Ali, not Dee Auto Sales, paid CoPart for the Jeep. [DE 1 at 2]. Ali also took delivery of the vehicle and the California Salvage Title from Allstate, suggesting that Allstate understood Ali to be the purchaser. [*Id*. at 3]. Taking all allegations in the complaint as true, Plaintiffs have sufficiently alleged privity of contract with Allstate.[1]

Allstate further alleges that even if privity of contract exists, Plaintiffs' breach of warranty claims should be dismissed because they "contain several additional factual misrepresentations regarding alleged warranties related to the Vehicle's title." [DE 12-1 at 176]. This argument asserts an issue of fact not capable of resolution at the motion to dismiss stage. Instead, the Court must take all allegations as true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency*, 552 F.3d at 434. Thus, Allstate's motion to dismiss is denied as to Plaintiffs' breach of warranty claims.

**III.     KCPA Claim**

The Kentucky Consumer Protection Act ("KCPA") prohibits the use of "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and "provides a private remedy to 'any person who purchases or leases goods or services primarily for personal family or household purposes and thereby suffers any ascertainable loss of money or property as a result of' a violation of [KRS §] 367.170." Ky. Rev. Stat. § 367.170(1); *Ky Laborers Dist.*

---

[1] The Court notes that it is unclear from the complaint whether Harvey, Ali, or both were party to the contract with Allstate. While the record is insufficient to make the determination at this time, if Harvey is later found to lack privity of contract with Allstate she is unlikely to have standing to bring these claims.

*Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 772 (W.D. Ky. 1998) (quoting Ky. Rev. Stat. § 367.220). "An action under the KCPA requires privity of contract between the parties." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 961–62 (E.D. Ky. 2019) (quoting *PNC Bank, N.A. v. Merenbloom*, Nos. 15-6361, 16-5277, 2017 WL 3973962, at *3 (6th Cir. June 16, 2017).

To assert a KCPA claim, a plaintiff must allege that the defendant engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and that such practices caused the plaintiff's harm. Ky. Rev. Stat. § 367.170(1). "The mere failure to perform a contract will not trigger application of the KCPA. Instead, the statute applies only where there is 'some evidence of unfair, false, misleading or deceptive acts' and 'some element of intentional or grossly negligent conduct is also present.'" *M.T. v. Saum*, 7 F. Supp. 3d 701, 705 (W.D. Ky. 2014) (quoting *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky.1991) (internal quotations omitted)). Kentucky law defines gross negligence as "wanton or reckless disregard for the safety of other persons." *M.T. v. Saum*, 3 F. Supp. 3d 617 (W.D. Ky. 2014) (quoting *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky.Ct.App. 2004) (internal quotations omitted)).

Additionally, KCPA claims must meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b). *Kempf v. Lumber Liquidators, Inc.*, No. 3:16-CV-492-DJH, 2017 WL 4288903 (W.D. Ky. Sept. 27, 2017). Rule 9(b) requires a party alleging fraud to state with particularity the circumstances of the fraud. To satisfy Rule 9(b), the Sixth Circuit requires that the pleading "specify 1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent." *Morris Aviation, LLC v.*

7

*Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

First, Allstate argues that Plaintiffs' KCPA claim must be dismissed for lack of privity of contract. [DE 12-1 at 178]. As explained above, this argument fails because Plaintiffs have sufficiently alleged that they were in privity of contract with Allstate.

Second, Allstate argues that Plaintiffs' complaint fails to meet the heightened pleading standard. In *Kempf*, the plaintiff asserted that Lumber Liquidators represented that their flooring was "harder and more durable than wood" thereby inducing her to purchase it. *Kempf*, 2017 WL 4288903, at *5. The court held that she had sufficiently pleaded a KCPA claim because she alleged specific misrepresentations which led to the conclusion that "Lumber Liquidators at least misled Kempf, and at worst deceived her." *Id*.

Plaintiffs have alleged that Allstate "obtained a California Salvage Certificate for a 2019 Jeep Grand Cherokee TrackHawk, VIN# 1C4RJFN95KC562816" and advertised the same online. [DE 1 at 2]. As in *Kempf*, Plaintiffs have identified the Allstate VIN as a specific misrepresentation made on both the CoPart website and the California Salvage Certificate. *See Morris Aviation*, 536 F. App'x at 562 (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d at 247). While Plaintiffs may not have corresponded with Allstate directly, they relied on Allstate's representations in the CoPart listing and on the California Salvage Certificate. [DE 1 at 5]. The VIN listed on the Certificate and dash was registered to a different vehicle in Illinois. [*Id*. at 3]. Further, a quick inspection of the vehicle would have revealed that the two other VINs listed (1) did not match the VIN on the dash, and (2) were registered to stolen vehicles. Making all reasonable inferences in favor of the Plaintiffs, Allstate's sale of the Jeep with the Allstate VIN could rise to the level of gross negligence. *See Saum*, 7 F. Supp. 3d at 705 (holding KCPA claims

8

require some element of intentional or grossly negligent conduct). Thus, at this early stage of litigation Plaintiffs have sufficiently pleaded all elements of a KCPA claim.

### IV. Fraud Claim

"The elements of fraud under Kentucky law are a) a material representation, b) which is false, c) known to be false or made recklessly, d) made with inducement to be acted upon, e) acted in reliance thereon, and f) causing injury. *Campbell v. Cap. One, N.A.*, No. 1:12-CV-82, 2012 WL 4959611, at *4 (W.D. Ky. Oct. 16, 2012) (citing *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999). A party alleging fraud must also meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b).

However, the economic loss doctrine prohibits recovery for "fraud claims where the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 414–15 (6th Cir. 2022) (quoting *Nami Res. Co. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018)). The doctrine prohibits the law of contract and the law of tort from dissolving into each other. *See id.* "Thus, where the 'fraud claim is indistinguishable from the breach of contract claim' the plaintiff cannot recover for the tort claim." *New London Tobacco*, 44 F.4th at 414–15 (quoting *Nami*, 554 S.W.3d at 336). "A breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 792 (Ky. 2017).

At the motion to dismiss stage, however, this Court has held that when there is a dispute as to the existence of a contractual relationship, dismissal of certain equitable claims is not proper. *Holley Performance Prod., Inc. v. Keystone Auto. Operations, Inc.*, No. 1:09-CV-00053-TBR, 2009 WL 3613735, at *6 (W.D. Ky. Oct. 29, 2009) ("This case has not advanced so far that the

contract has been clearly established by the Court as valid and enforceable. Therefore. . .at this early stage of litigation, it is proper for [the plaintiff] to allege both its claim for breach of contract and unjust enrichment."). The Court's role at the motion to dismiss stage is to determine if all claims are sufficiently pleaded. *See Twombly*, 550 U.S. at 570. Under Fed. R. Civ. P. 8(d)(2), plaintiffs are permitted to plead in the alternative.

Allstate disputes the existence of a sales contract between themselves and Plaintiffs. [DE 12-1 at 175]. The Court has not yet reached the issue of the contract's existence. If subsequent proceedings were to establish the existence of a valid contract between the parties, the law is clear that Plaintiffs could not recover under both their contract and equitable claims. *See New London Tobacco*, 44 F.4th at 414–15 (quoting *Nami*, 554 S.W.3d at 336). At this stage, however, the Plaintiffs are not required to forfeit a possible theory of recovery. *Holley*, 2009 WL 3613735, at *6 (quoting *Medplast Elkhorn, Inc. v. Cytocore, Inc.*, 2009 WL 2503710, No. 09C0593, at * 1 (E.D.Wis. Aug. 17, 2009).

The Court now turns to the sufficiency of Plaintiffs' fraud claim. First, Plaintiffs have pleaded with the required specificity that Allstate represented that they owned the Jeep and that the advertised VIN number was registered to the Jeep. [DE 1 at 2]. They have also alleged that those statements were false, as the Allstate VIN belonged to a different vehicle and the Jeep was actually owned by USAA under the Confidential VIN. [*Id*. at 3]. Plaintiffs allege that Allstate "knew or should have known" that the Jeep was stolen. [*Id*. at 6]. Further, Plaintiffs have alleged sufficient facts to support a presumption that they were induced by and relied upon the misrepresentations in the CoPart listing. It was Ali, not Dee Auto Sales, who paid CoPart directly and accepted delivery. *C.f. Compressed Gas Corp. v. U.S. Steel Corp.*, 857 F.2d 346, 352 (6th Cir. 1988) (reversing and vacating verdict on fraud claim when there was no proof that the plaintiff

10

was the one who relied on the misleading representation.); [*Id*. at 2–3]. Finally, the complaint alleges that Allstate's misrepresentations led to Plaintiffs' damages. [*Id*. at 2–8]. Thus, Plaintiffs' fraud claim is sufficiently pleaded and Allstate's motion to dismiss is denied.

## V.     Unjust Enrichment Claim

Allstate does not dispute the sufficiency of Plaintiffs' unjust enrichment claim. [DE 19-1 at 203–32]. Instead, it asserts that the claim is barred by the economic loss rule. [*Id*.]. Like fraud claims, an unjust enrichment claim cannot stand if it is premised on the same facts as a breach of contract claim. *Poynter v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-773-DJH-CHL, 2016 WL 5380926, at *6 (W.D. Ky. Sept. 23, 2016). However, for the reasons stated above, Plaintiffs are not required to abandon their unjust enrichment claim at this stage of the litigation. *See Holley*, 2009 WL 3613735, at *6 (holding dismissal of an unjust enrichment claim under economic loss doctrine is improper when the existence of a contract is in dispute). Thus, Allstate's motion to dismiss count five of the complaint is denied.

## VI.    Conversion Claim

Plaintiffs assert a conversion claim, alleging that "Allstate has intentionally and wrongfully converted the funds paid by Plaintiffs" for the Jeep. [DE 1 at 7].

Conversion is an intentional tort. The elements of conversion in Kentucky are: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the

11

property; and (7) the plaintiff suffered damage by the loss of the property. *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014) (quoting *Ky. Ass'n of Cntys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).

The property rights alleged to have been converted are the funds Plaintiffs paid to purchase the Jeep. [DE 1 at 7; DE 15 at 196]. In their motion to dismiss, Allstate argues that Plaintiffs have failed to allege (1) that Allstate acted intentionally in converting their funds, (2) that Plaintiffs ever requested a refund, and (3) that Allstate was the legal cause of Plaintiffs' loss of funds. [DE 12-1 at 181]. The complaint sufficiently alleges intent. It states that Allstate "intentionally and wrongfully converted the funds" [DE 1 at 7] and that Allstate "knew or should have known that the TrackHawk it offered for sale was a stolen vehicle." [*Id*. at 6]. Further, Plaintiffs allege that they notified Allstate that the Jeep was sold to them as a stolen vehicle. [*Id*. at 3]. Well-pleaded complaints need not contain a "formulaic recitation of the elements of a cause of action" as long as they assert factual allegations that are "enough to raise a right to belief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). That Allstate was notified of the Jeep's seizure and did not refund the purchase price is sufficient to support an inference that Plaintiffs have satisfied the fifth element of their conversion claim.

Finally, Allstate bases its causation argument on a factual dispute about the circumstances surrounding Ali's arrest and the Jeep's seizure. [DE 12-1 at 181]. At the motion to dismiss stage, the Court accepts all allegations in complaint as true and construes all facts in favor of the non-moving party. *See Total Benefits Plan. Agency*, 552 F.3d at 434. Allstate's arguments are better suited to a motion for summary judgment. Accordingly, their motion to dismiss Plaintiffs' conversion claim is denied.

**VII.     IIED Claim**

The Kentucky Supreme Court has adopted the Restatement (Second) of Torts definition of IIED: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to others results from it, for such bodily harm." *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (quoting Restatement (Second) of Torts § 46)).  To recover for IIED, a plaintiff must establish:

(1) the wrongdoer's conduct was intentional or reckless;
(2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
(3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
(4) the distress suffered must be severe.

*Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000).  The tort is reserved for conduct that is "truly outrageous, intolerable and which results in bringing one to his knees;" it "is not available for petty insults, unkind words and minor indignities." *Id*. at 914 (internal quotations and citations omitted).

Plaintiffs have failed to allege that Allstate's conduct was extreme or outrageous.  *See Craft*, 671 S.W.2d at 251 (quoting Restatement (Second) of Torts § 46)).  Nor could they, since selling a car with title defects is not "so extreme in degree, as to go beyond all possible bounds of decency." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990) (internal quotation omitted); see also *Brown v. Lexington-Fayette Urb. Cnty. Gov't Dep't of Pub. Works*, No. CIV. A. 08-500, 2010 WL 1529410, at *5 (E.D. Ky. Apr. 15, 2010) ("Kentucky courts declined to find that a nurse [who] told a patient who had just delivered a stillborn baby to 'shut up,' or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably, or 'beyond all decency.'" (internal citation omitted)).  Thus, Allstate's motion to dismiss the claim is granted.

**VIII.    Punitive Conduct and Damages Claims**

13

Compensatory damages "are a prayer for relief, not a cause of action." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012). Plaintiffs admit as much. [DE 15 at 198 "Count Nine, labeled 'Damages,' reiterates the facts upon which the Plaintiffs base their claim and makes specific allegations of the damages that were suffered"]. Likewise, "[a] plaintiff cannot assert an independent cause of action for punitive damages under Kentucky law." *Crump v. State Farm Mut. Auto. Ins. Co.*, No. CV 5:21-229-DCR, 2021 WL 5450448, at *16 (E.D. Ky. Nov. 22, 2021).

As such, Plaintiffs' causes of action for punitive damages and damages will be dismissed because such claims are not assertable as independent counts in a complaint. Notwithstanding, Plaintiffs "may still recover punitive [or compensatory] damages should the evidence support such a finding." *Archey v. AT & T Mobility, LLC*, No. 17-91-DLB-CJS, 2017 WL 6614106, at *4 (E.D. Ky. Dec. 26, 2017).

## CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS AS FOLLOWS**:

(1) Allstate's motion to dismiss [DE 12] is **GRANTED** as to Counts Seven, Eight, and Nine and **DENIED** as to Counts One, Two, Three, and Six.

(2) Allstate's second motion to dismiss [DE 19] is **DENIED**.

March 20, 2024

Rebecca Grady Jennings, District Judge
United States District Court

14